## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

MICHAEL O'CALLAGHAN,                                        Case No. 3:21-cv-812-AC

                    Plaintiff,                                              **ORDER**

    v.

**CITY OF PORTLAND**, and **RAPID RESPONSE BIO CLEAN**,

                    Defendants.

_____

**Michael H. Simon, United States District Judge**

      Plaintiff Michael O'Callaghan, proceeding *pro se*, filed a Complaint asserting a variety of federal and state constitutional violations, seeks leave to proceed *in forma pauperis* ("IFP"), and moves for a preliminary injunction.  For the reasons set forth below, the Complaint (ECF 2) is dismissed with leave to amend and the Motion for Injunctive Relief (ECF 5) is denied.   The court defers ruling on the IFP petitions (ECF 1 & 4) pending submission of an amended complaint.

*Background*

      The following facts are taken from O'Callaghan's Complaint, his attached affidavit, and his Motion for Injunctive Relief.  O'Callaghan is living unhoused and has been embroiled in litigation for several years with Defendants the City of Portland ("the City") and Rapid Response Bio Clean ("Rapid Response") (collectively "Defendants") concerning the removal of his belongings from campsites.  In the instant action, O'Callaghan states that he has been forcibly removed from campsites over twenty-five times yet has not been cited for violating Portland City

Page 1  – ORDER

Code ("PCC") 14A.50.020.   He contends that Defendants and their employees and contractors confiscated his personal property and that he has been unable to retrieve it.   He also alleges that on May 12, 2021, Rapid Response was cleaning up property adjacent to where he was camping on private property, and that two days later they removed plywood and lumber from the private property.   O'Callaghan further alleges that on May 15, 2021, and May 24, 2021, Defendants posted notices stating that they were intending to remove his campsite.   He alleges that Defendants intend to remove his permanent structures from the private property and remove or destroy all his personal property.

O'Callaghan contends that these confiscations violate these provisions of the United States Constitution and Oregon Constitution:   (1) search and seizure; (2) due process; (3) cruel and unusual punishment; and (4) equal protection.   He has not named as defendants any individual officers or employees of Defendants and appears to be suing the City as a municipal corporation. He alleges $75,000 in damages and seeks injunctive relief.

*Legal Standards*

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee, 28 U.S.C. § 1914(a), but the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts if they are unable to pay filing costs and fees.   Before the court authorizes a litigant to proceed IFP, the court must determine whether the litigant is unable to pay the costs of commencing the action.   28 U.S.C. § 1915(a)(1).   The court also may dismiss a case at any time if the court determines that the lawsuit is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief.   28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

In making the second determination, 28 U.S.C. § 1915(e)(2)(B) empowers district courts to screen complaints even before service of the complaint on the defendants, and to dismiss a complaint if it fails to state a claim.   Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as that used to decide a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.   *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).   To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*   The court is not required to accept legal conclusions, unsupported by alleged facts, as true.   *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).   The court should construe pleadings by *pro se* plaintiffs liberally and afford them the benefit of any doubt.   *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).   Additionally, a *pro se* plaintiff is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment.   *Id.*

The same general legal standards govern temporary restraining orders and preliminary injunctions.   Fed. R. Civ. P. 65; *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977); *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839

n.7 (9th Cir. 2001).    A plaintiff seeking such relief must establish:    (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) a preliminary injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 21 (2008).    Alternatively, if a plaintiff shows there are "serious questions going to the merits" and a hardship balance that tips sharply toward the plaintiff, this may support issuing an injunction "assuming the other two elements of the *Winter* test are also met."    *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A court may not enter a preliminary injunction without first affording the adverse party notice and an opportunity to be heard.    FED. R. CIV. P. 65(l)(2); *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1322 (9th Cir. 1985).    By contrast, an emergency temporary restraining order may be entered without notice.    *See* FED R. CIV. P. 65(b)(1)(A) (restricting availability of ex parte temporary restraining orders to situations in which "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.").

*Discussion*

I.    IFP Petition

O'Callaghan's IFP petition states he has $500 in cash or in a checking account, that he is unemployed, and that he receives approximately $975 per month in government assistance.    He also states he has monthly expenses of $950 for food, heat, clothing, storage, phone, and transportation.    Based on this information, it appears that O'Callaghan is unable to pay the costs of commencing this action.

II.    Jurisdiction

O'Callaghan alleges his federal constitutional rights were violated, thus providing a basis for federal question jurisdiction.  *See Gonzaga Univ. v. United States*, 536 U.S. 273, 285 (2002) (providing that § 1983 supplies the cause of action for alleged constitutional violations).   If the Complaint sets forth a claim arising under federal question jurisdiction, the court may, in its discretion, adjudicate related state law claims.  28 U.S.C. § 1367 (a) (providing supplemental jurisdiction over state law claims where they "form part of the same case or controversy" as the federal claim).

III.    O'Callaghan's Complaint Fails to State a Plausible Claim

As explained above, the federal IFP statute directs a court to assess, in part, whether an action fails to state a claim upon which relief may be granted.   28 U.S.C. § 1915(e)(2)(B).   While O'Callaghan does not invoke 42 U.S.C. § 1983, the Court construes his claim as one brought under this statute.   Section 1983 does not create any substantive rights, but instead provides a vehicle for plaintiffs to bring federal constitutional and statutory challenges against state and local officials.  *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015).

Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights."  *Conn. v. Gabbert*, 526 U.S. 286, 290 (1999); *Partin v. Gevatoski*, Case No. 6:19-cv-1948-AA, 2020 WL 4587386, at *3 (D. Or. Aug. 10, 2020). To maintain a claim under § 1983, a plaintiff must allege both:  (1) the deprivation of a right secured by the federal Constitution or statutory law, and (2) that the deprivation was committed by a person acting under color of state law.  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir.  2006).   The court assesses each of the alleged Constitutional violations in turn to determine whether he has stated a plausible § 1983 claim for relief.

A.      *Fourth Amendment*

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."   U.S. CONST. AMEND. IV.   "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."   *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *see also Yeager v. City of Seattle*, Case No. 2:20-cv-01813-RAJ, 2020 WL 7398748, at *4 (W.D. Wash. Dec. 17, 2020) (denying plaintiff's claim for injunctive relief where she had not shown likelihood of success on a claim that sweeps of homeless camps resulted in Fourth Amendment violations).

O'Callaghan appears to allege that Defendants have illegally seized his property pursuant to PCC 14A.50.020, and that this violates the Fourth Amendment.   That ordinance provides:

A. As used in this Section:

>  1. "To camp" means to set up, or to remain in or at a campsite, for the purpose of establishing or maintaining a temporary place to live.
>
>  2. "Campsite" means any place where any bedding, sleeping bag, or other sleeping matter, or any stove or fire is placed, established, or maintained, whether or not such place incorporates the use of any tent, lean-to, shack, or any other structure, or any vehicle or part thereof.

B. It is unlawful for any person to camp in or upon any public property or public right of way, unless otherwise specifically authorized by this Code or by declaration by the Mayor in emergency circumstances.

C. The violation of this Section is punishable, upon conviction, by a fine of not more than $100 or by imprisonment for a period not to exceed 30 days or both.

PCC 14A.50.020, *available at* portland.gov/code/14/a50.

In his affidavit in support of his Complaint, O'Callaghan alleges that he was camping on private property and that a crew from Rapid Response removed plywood and other wood and posted a notice that the campsite would be cleared.   As currently alleged, however, he provides

Page 6  – ORDER

no facts to explain the basis of his Fourth Amendment claim.   O'Callaghan does not provide the location of the private property, that he owns the private property, or that he had permission to be on the private property.   He alleges that Defendants posted a notice that that the campsite would be cleared.   O'Callaghan fails to allege any additional facts demonstrating how or why the alleged search and seizure of his property was unreasonable.   *See Yeager*, 2020 WL 7398748, at *5 (holding there was no evidence of wholesale destruction of camper's belongings or other evidence that the city's policy or actions were unreasonable).   O'Callaghan's "threadbare recitals" are simply insufficient to state a Fourth Amendment claim.   *See also O'Callaghan v. City of Portland*, Case No. 3:18-cv-1641-YY, 2019 WL 8226176, at *4 (D. Or. Sept. 24, 2019); *adopted* 2020 WL 1250816 (dismissing O'Callaghan's Fourth, Fifth, Eighth and Fourteenth Amendment claims premised on previous similar actions by Defendants); *O'Callaghan v. City of Portland*, 736 F. App'x 704, 705 (9th Cir. 2018) (holding earlier Fourth Amendment claim was barred by *Heck*).

B.      *Eighth Amendment*

O'Callaghan's sole Eighth Amendment allegation appears in his affidavit and asserts that the City should be restrained from "inflicting cruel and unusual punishment on its peoples."   (Aff. at 2.)   O'Callaghan asserts the anticamping ordinance was struck down by the Ninth Circuit in *Martin v. City of Boise*, 920 F.3d 584, 603 (9th Cir. 2019).   O'Callaghan misunderstands *Martin*.

In *Martin*, the Ninth Circuit examined a Boise ordinance and held that "the Eighth Amendment's prohibition on cruel and unusual punishment bars a city from prosecuting people criminally for sleeping outside on public property when those people have no home or other shelter to go to."   *Id.*   In *Martin*, the Ninth Circuit held that "'so long as there is a greater number of homeless individuals in [a jurisdiction] than the number of available beds [in shelters],' the jurisdiction cannot prosecute homeless individuals for 'involuntarily sitting, lying, and sleeping in

Page 7   – ORDER

public.'"  *Id.* at 617 (alteration in original).   The *Martin* majority emphasized that "[o]ur holding is a narrow one."  *Id.*

Although PCC 14A.50.020 provides for criminal prosecution, O'Callaghan has not alleged that he was arrested, charged, or convicted, or asserted any facts showing a "credible risk of prosecution" despite his camps being swept twenty-five times.   Therefore, *Martin* and the Eighth Amendment have no application here.  *See Yeager*, 2020 WL 7398748, at *5 (refusing to extend *Martin* to non-criminal statutes); *O'Callaghan v. City of Portland*, Case No. 3:12-cv-00201-YY, 2020 WL 265197, at *1 (D. Or. Jan. 17, 2020) (dismissing Eighth Amendment claim where plaintiff was not prosecuted or fined for violating the anticamping ordinance and failed to allege a credible risk of future prosecution, thus lacking standing to raise an as applied Eighth Amendment claim).   Accordingly, as presently alleged, O'Callaghan fails to allege an Eighth Amendment violation, and this claim fails.  *See Steffen v. Rowland*, 972 F.2d 1343, at *3 (9th Cir. 1992) (Mem. Op.) (recognizing that the Eighth Amendment was designed to protect those convicted of crimes) (citing *Ingraham v. Wright*, 430 U.S. 651, 668 (1977)).

C.      *Due Process*

The Fourteenth Amendment maintains that no State shall "deprive any person of life, liberty, or property, without due process of law."   U.S. CONST. AMEND. XIV; *accord* U.S. CONST. AMEND. V.  "Any significant taking of property by the State is within the purview of the Due Process Clause."  *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).   To state a due process claim, the court examines:   (1) whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of life, liberty or property; and (2) what additional procedural process was due.  *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012) (quoting *Ingraham*, 430 U.S. at 672).

Due process is not a "technical conception with a fixed content unrelated to time, place and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).  Due process is "flexible" and "calls for such procedural protections as the particular situation demands." *Id.*  The Supreme Court has set forth three factors that a court must consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

O'Callaghan fails to allege what additional procedures he was entitled to receive under the Fourteenth Amendment.  *See Lavan*, 693 F.3d at 1032 (recognizing that unhoused individual's belongings are property within the meaning of the due process under Fourteenth Amendment); *O'Callaghan*, 2019 WL 8226176, at *4 (dismissing Fifth and Fourteenth Amendment due process claims because plaintiff failed to plead what additional process he was entitled to receive).  Here, O'Callaghan attaches the notices informing him the campsite is illegal, that the campsite would be cleared within ten days, that Rapid Response would store the property, of Rapid Response's phone number to make arrangements for retrieval, and that unclaimed property would be destroyed after thirty days.  (Aff. at 4.)  However, O'Callaghan fails to plead how the process Defendants invoked resulted in a risk of an erroneous deprivation, fails to identify any substitute procedural safeguards, and fails to identify what probative value such additional safeguards would provide in light of their additional administrative burden.  Therefore, as currently alleged, O'Callaghan has failed to state a due process claim.

D.      *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person the equal protection of the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "When an equal protection claim is premised on unique treatment rather than a classification, the Supreme Court has described it as a 'class of one' claim." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To establish a violation of equal protection in a "class of one" case, a plaintiff must establish that the defendants "intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *Id.* (internal citations omitted). However, a person cannot state an equal protection claim merely by dividing all persons not injured into one class and alleging that they received better treatment than did the plaintiff. *See Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Instead, to state a "class of one" claim, the plaintiff must identify the group of individuals with whom he is similarly situated, identify the allegedly intentional and disparate treatment, and allege that there was no rational basis for the different treatment. *Gerhart v. Lake Cty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

The basis of O'Callaghan's equal protection claim is unclear. Broadly viewing his Complaint and supporting papers in his request for injunctive relief, O'Callaghan claims he is a target of the City's action because his camps have been swept more than twenty-five times. But he fails to allege any facts concerning how he has been intentionally treated differently from other similarly situated unhoused individuals and fails to allege how Defendants' differential treatment is devoid of any rational basis. Accordingly, O'Callaghan's fails to allege an equal protection claim.

Page 10 – ORDER

E.      *Claims Against Government Entities*

"Local government entities are considered 'persons' for purposes of § 1983 and can be sued directly for monetary, declaratory, or injunctive relief where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers.'"  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs. of New York City*, 436 U.S. 658, 690 (1978)).   However, a municipality "cannot be held liable under § 1983 on a respondeat superior theory," that is, "*solely* because it employs a tortfeasor."  *Monell*, 436 at 691.

In the instant case, O'Callaghan names as defendants two entities – the City, a local government entity, and Rapid Response, an entity presumably providing services for the City.   To hold the City or Rapid Response liable under § 1983, O'Callaghan must show:  (1) that he possessed a constitutional right of which he was deprived; (2) that City of Portland and Rapid Response had a policy; (3) that the policy "amounts to deliberate indifference" to his constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."  *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989); *O'Callaghan v. City of Cannon Beach*, No. 3:16-cv-01676-HZ, 2016 WL 5853722, at *2 (D. Or. Oct. 5, 2016).   There also must be a "direct causal link" between the policy or custom and the injury, and the plaintiff must be able to demonstrate that the injury resulted from a "permanent and well settled practice."  *Anderson*, 451 F.3d at 1067; *see also Fotinos v. Fotinos*, No. 14-15475, 2016 WL 1072351, at *1 (9th Cir. Mar. 18, 2016) (dismissing § 1983 claim that "failed to allege facts to support a finding that any of the Defendants acted according to a formal governmental policy or a longstanding practice or custom of the local governmental entity.") (simplified).

As discussed above, O'Callaghan fails to allege a viable constitutional violation. Thus, his claims under *Monell* fail. Additionally, assuming that PCC 14A.50.020 is the alleged policy, O'Callaghan fails to allege facts sufficient to show that this policy amounted to a deliberate indifference to his rights.   Without such allegations, O'Callaghan's allegations fail to set forth a § 1983 violation.   Further, his conclusory assertion that Mayor Ted Wheeler stated he would ignore the Ninth Circuit's ruling in *Martin*, without more, will not do.   *See Iqbal*, 556 U.S. at 678 (noting that a pleading that simply "offers labels and conclusions . . . . will not do"); *Sangana v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004) (explaining that a plaintiff must provide enough factual detail to "give 'fair notice' of the claim and its basis").

IV.   O'Callaghan's Motion for Preliminary Injunction

The legal standard for preliminary injunctive relief generally requires a litigant to demonstrate that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.   *See Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1057 (9th Cir. 2007).   Given the complaint's deficiencies detailed above, the Court finds that there is no showing of likelihood of success on the merits at this time.   *Id.* at 1058 ("Once a court determines a complete lack of probability of success or serious questions going to the merits, its analysis may end, and no further findings are necessary"); *Developmental Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) ("[I]f a plaintiff fails to show that he has some chance on the merits, that ends the matter").   Accordingly, O'Callaghan's Motion for Injunctive Relief (ECF 5) is denied.

V.    <u>Leave to Amend</u>

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave when justice so requires."   "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality."   *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) (citation and quotation marks omitted).   "This policy is applied even more liberally to pro se litigants."   *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987).   "A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."   *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Here, all of O'Callaghan's claims suffer from a lack of factual development.   He fails to allege sufficient facts to explain the nature of any of his constitutional claims.   Pursuant to Rule 15(a), he is entitled to an opportunity to amend because the Court cannot say with absolute certainty that the amendments would fail to cure the current problems with the complaint.

## Conclusion

For the reasons set forth above, the Court DISMISSES the Complaint without prejudice and with leave to amend.   The Court DENIES Plaintiff's Motion for Injunctive Relief (ECF 5). The Court reserves ruling on the IFP application until submission of an amended complaint. Plaintiff shall have until July 6, 2021 to file an amended complaint.   Plaintiff is advised that failure to file an amended complaint with the allotted time may result in entry of a judgment of dismissal.

**IT IS SO ORDERED.**

DATED this 4th day of June, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
