UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL O'CALLAGHAN,

                         Plaintiff,

      v.

CITY OF PORTLAND; and RAPID
RESPONSE BIO CLEAN,

                    Defendants.

Case No. 3:21-cv-00812-AR

**ORDER FOR SUPPLEMENTAL
BRIEFING**

_____

**ARMISTEAD, Magistrate Judge**

    In this 42 U.S.C. § 1983 civil rights action, plaintiff Michael O'Callaghan, who is living

unhoused and representing himself, asserts, among other things, that 20 times, including twice in

May 2021, defendants City of Portland (the City) and Rapid Response Bio Clean (together,

defendants) posted notices for illegal campsite removal when he lived on private property. The

Page  1  –ORDER FOR SUPPLEMENTAL BRIEFING

problem, O'Callaghan alleges, is that the Campsite Removal Policy (the Policy; McFate Decl. Ex. C, ECF No. 64) on which defendants rely to clear illegal campsites concerns campsites on public property, not private property, and that the postings directed toward private property were without due process. O'Callaghan claims that therefore his procedural due process rights under the Fourteenth Amendment were violated.[1]

Because defendants misread O'Callaghan's procedural due process claim in their motions for summary judgment, the court requests supplemental briefing from the parties.[2]  Briefing is limited to that claim and must not exceed 10 pages. Defendants' briefing is due 30 days from entry of this order—June 17, 2024. O'Callaghan has until July 17, 2024, to respond to defendants' briefing, and defendants have 14 days to reply—July 31, 2024. Because this issue requires constitutional legal analysis, the court advises O'Callaghan to obtain counsel for this limited issue and to please contact the court if he would like it to appoint counsel. The court will determine later if oral argument is necessary.

**DISCUSSION**

---

[1]    O'Callaghan also alleges that defendants violated the Fourth Amendment, the Eighth Amendment, and the equal protection clause of the Fourteenth Amendment. The court does not require additional briefing on those claims.

[2]    Defendants, of course, with the court's explanation of O'Callaghan's due process claim in hand, must decide if they want to move for summary judgment on that claim. If not, supplemental briefing is unnecessary.

O'Callaghan's procedural due process claim allgeges that he has "been 'posted' more than 25 times for camping violations and has been threatened with property disposal"—20 times on private property.[3]  (First Amended Complaint at 8, ECF No. 7.) O'Callaghan adds:

> The ordinance is silent on confiscation. Also it only speaks to public property not private. In the prior cases the court ignored the private property question in its entirety. ….. All these postings no citation no judicial access no Due Process.

(*Id*.) That is, the court understands O'Callaghan to allege that defendants have, without providing any due process, posted notices of illegal campsite 20 times on private property where he has resided and threatened to remove his belongings.[4]  The claim is not that his belongings were removed without due process but rather that the repeated threats of removing his belongings and shelter—which were on private property and not on public property—were without due process. That distinction matters, as the court understands his claim, because the Policy (what O'Callaghan calls the "ordinance") defendants rely on to post notices that illegal campsite shelters will be removed is directed toward illegal campsites on public property.[5]  Further, he

---

[3]     O'Callaghan also alleges that he has been posted five times on public property but, when his entire Due Process claim is considered, O'Callaghan alleges deprivation of due process when he is on private property.

[4]     Although O'Callaghan's Due Process claim is not a model of clarity, it clearly conveys that his concern are the many postings threatening removal of his belongings on private property. In any event, his *pro se* civil rights claim must be construed liberally and given the benefit of the doubt, even when deciding a motion for summary judgment. *See Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999) (applying the *pro se* litigant civil rights rule of pleading construction to summary judgment, citing *Karim-Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.")).

[5]     O'Callaghan in his Response to defendants' motions for summary judgment attaches a copy of a document titled "City of Portland—Addressing Homelessness and Urban Camping on

alleges that posting removal notices without a citation, without a judicial remedy, or without some other way for him to challenge whether defendants can do so legally violates his due process rights.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause" of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). A procedural due process claim "first ask[s] whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty or property'; if protected interests are implicated," the court "must decide what procedures constitute 'due process of law.'" *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Due process is flexible and "calls for such procedural protections as the particular situation demands" and setting out three factors to assess due process." *Mathews*, 424 U.S. at 334-35. To determine constitutionally adequate due process, *Mathews* provides three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest,

---

Private Property." (ECF 114 at 6.) The document begins by stating that "The City will send crews to clean trash on City property only. The City does not have the lawful authority to address camping on property that is not owned or maintained by the City." It goes on to instruct private property owners on what they can do to clean homeless campsites and that "If there is trash or human waste on your property from any person, the City does not have the authority to clean it up." The court does not know where this guidance comes from or when it was issued. However, the City has identical and similar guidance on its website.
https://www.portland.gov/homelessnessimpactreduction/private-property-issues.

including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail. *Id.* at 335.

The City argues that, applying the three factors set out in *Mathews* and assuming that

O'Callaghan does have a protected property interest in the property "he left at the illegal

campsite,[6] and can prove that the City or Rapid Response confiscated the property, he cannot

show that the procedures used to confiscate that property did not constitute due process of law."

(City's Mot. Summ. J. at 11) That is because, the City contends, O'Callaghan's property interest

is not substantial because the items taken from him were items that he did not pay for and has not

provided an estimate of the value of those items. And the City argues that, if his private property

was important to O'Callaghan, he would not have left the property for an hour and a half to get

coffee or run an errand. (*Id.*) The City also argues that O'Callaghan fails to show a "risk of

erroneous deprivation" and has not identified any "substitute procedural safeguards that would

be more effective for cleaning up illegal campsites in the City, as none exist." In the City's view,

---

6        The City also argues, relying on *Lavan v. City of Los Angeles*, 693 F.3d 1022 (2012), that
O'Callaghan must identify "existing rules or understandings that stem from an independent
source such as state law-rules or understandings" that support his property interest and he has
failed to do that. (City's Mot. for Summ. J. at p. 11, ECF 63). In *Lavan*, the Ninth Circuit
addressed the defendant City of Los Angeles' argument that there is not a constitutionally
protected property interest "in unattended personal property left illegally on the public
sidewalk." However, in doing so, the Ninth Circuit cited the California law that recognizes the
right of ownership of personal property by "any person" but did not hold that it was imposing on
the homeless individuals in that case a burden of identifying "state law-rules or understanding."
*Lavan*, 693 F.3d at 1031. Moreover, O'Callaghan's interest in his personal property is self-
evident. Indeed, ORS § 195.505(2) recognizes rights in personal property for homeless
individuals by defining "personal property" as "any item that can reasonably be identified as
belonging to an individual and that has apparent value or utility" and the Policy mirrors that
definition by providing that the City will "store all personal property, meaning any item that can
be reasonably identified as belonging to an individual and has apparent value or utility."

Page  5  –ORDER FOR SUPPLEMENTAL BRIEFING

the notice it provides eliminates the risk of erroneous removal of property because it provides 72-hour notice before property at an illegal campsite is cleared and there are procedures for property to be returned. Moreover, according to the City, it has a governmental interest in the clean-up of illegal campsites under the Policy and that, in doing so, it is complying with ORS §§ 195.500 and 195.505.[7]

The City, however, misunderstands O'Callaghan's due process claim. He alleges that he has been posted with illegal campsite notices 20 times while he was on private property. The notice posted near the 2831 SE Grand Ave. property on May 7 was captioned "ILLEGAL CAMPSITE" and instructed that it is the City's policy to "provide notice before removing shelters at illegal campsites." (Angel Dec. Ex. 4) The notice explains that confiscated property will be stored at Rapid Response's storage facility and provides a number to retrieve those confiscated items. What the notice lacks is any information about how to challenge the "illegal campsite" designation. And, without that information, the reader of the notice who has a campsite must either remove his shelter within at least 48 hours or have the shelter confiscated and then arrange for its retrieval. But, O'Callaghan asserts, the Policy applies to public property and is silent as to private property. (The Policy is also silent as to how notices are posted on or near campsites on private property.) The private interest he is asserting is the 'life, liberty or property' interest of not being subject to notice informing him that his shelter and belongings,

---

[7]     ORS § 195.500 provides that municipalities must "[d]evelop a policy that recognizes the social nature of the problem of homeless individuals on public property" and "[i]mplement the policy as developed, to ensure the most humane treatment for removal of homeless individuals from camping sites on public property." ORS § 195.505 sets out the necessary notice, storage and retrieval procedures for "personal property" ("any item that can reasonably be identified as belonging to an individual and that has apparent value or utility," ORS § 195.505(2)).

which are not on public property, will be removed unless he removes them first. The court observes that a homeless person's removal of a shelter may also mean that the homeless person has relocate to another location.

The City's "erroneous deprivation" argument concerns the deprivation of property that has been allegedly removed in a campsite clean-up. That, however, does not address the private interest O'Callaghan is asserting. Applied correctly, the question is, what is the risk of erroneously subjecting O'Callaghan to an illegal-campsite posting? And as for additional safeguards, O'Callaghan does allege two specific substitute procedural safeguards: issuing a citation, which presumably could allow a person to contest the illegal-campsite designation, and judicial access to contest the designation. O'Callaghan also generally alleges the availability of due process, which could be as simple as providing a phone number to permit a person to contest an illegal-campsite designation.[8]  Rapid Response's very brief argument in its summary judgment motion likewise misunderstands O'Callaghan's due process claim. Rapid Response's argument depends on an assertion that "none of plaintiff's personal property was removed."

O'Callaghan also raises the point that a court has not addressed his private property distinction. His point is salient because the City indicates on its website that the "Homelessness and Urban Camping Impact Reduction Program, or Impact Reduction Program (IRP), is responsible for coordinating campsite cleanups on *property and right-of-way owned by the City of Portland or the Oregon Department of Transportation*."

---

[8]    The court is unclear on what "substitute procedural safeguards" a plaintiff must show if the private interest at stake lacks any due process, or that that the third factor set out in *Mathews* is included in a plaintiff's burden of production.

https://www.portland.gov/homelessnessimpactreduction/campsite-assessment (emphasis added).

Further, ORS § 195.500(2) provides that municipalities must "[d]evelop a policy that recognizes

the social nature of the problem of homeless individuals on public property" and "[i]mplement

the policy as developed, to ensure the most humane treatment for removal of homeless

individuals from camping sites on public property."

　　　　In sum, the court requires briefing on the procedural due process claim alleged by

O'Callaghan and the points raised in this Order.[9] [10]

\\\\\

\\\\\

---

[9]　　　　For O'Callaghan's Fourth Amendment claim, the City argues that because O'Callaghan was committing criminal trespass, his Fourth Amendment right against unreasonable seizures was not violated. If defendants plan on applying a trespassing argument to O'Callaghan's due process claim, please note that the court has reservations. The court agrees with defendants that O'Callaghan does not have title to 2831 SE Grand Ave. But there is no evidence in the record that the owner of 2831 SE Grand Ave. either posted "no trespassing" signs or told O'Callaghan that he did not have permission to be there. Note that criminal trespass occurs when

> the physical nature, function, custom, or usage of property—or notice or lack of notice connected to the property—would cause a reasonable person to believe that no permission to enter or remain on the property is required[.] In other words, property is open to the public—and not subject to criminal trespass—when some characteristic of the property objectively would cause a reasonable person to believe that he or she is free to enter or remain on the property without permission, even if the owner intends the property to be private and requires permission to be there.

*State v. Moore*, 264 Or. App. 86, 91 (2014). Further, the cases on which the City relies for its argument hinge on a reasonable expectation of privacy and a Fourth Amendment *search*. The Ninth Circuit in *Lavan*, 693 F.3d at 1027-28, however, observed that the seizure of unabandoned possessions implicates an individual's possessory interests, not his or her privacy interests.

[10]　　　　The court is aware of the City's *Monell*-liability argument but notes that the argument depends on the City's misunderstanding that O'Callaghan's due process claim is directed toward an alleged removal of his property.

Page  8  –ORDER FOR SUPPLEMENTAL BRIEFING

\\\\\

\\\\\

\\\\\

## SCHEDULING ORDER

Briefing is limited to O'Callaghan's due process claim and must not exceed 10 pages.

Defendants' briefing is due 30 days from entry of this order—June 17, 2024. O'Callaghan has

until July 17, 2024, to respond to defendants' briefing, and defendants have 14 days to reply—

July 31, 2024.

DATED: May 16, 2024

_____
JEFF ARMISTEAD
United States Magistrate Judge