UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICHAEL O'CALLAGHAN,

                    Plaintiff,

        v.

CITY OF PORTLAND, *and* RAPID
RESPONSE BIO CLEAN,

                    Defendants.

Case No. 3:21-cv-00812-AR

**FINDINGS AND
RECOMMENDATION**

_____

**ARMISTEAD, Magistrate Judge**

In this 42 U.S.C. § 1983 civil rights action, plaintiff Michael O'Callaghan, who is living

unhoused and representing himself,[1] asserts that defendants City of Portland (the City) and

Rapid Response Bio Clean (together, defendants), have forcibly removed him from campsites

over 25 times, repeatedly confiscated his personal property, and continue to monitor, harass, and

target him for campsite "sweeps." O'Callaghan alleges that, in mid-May 2021, Rapid Response,

at the direction of the City, illegally removed plywood, a coffee table, and 2x4 lumber from his

property. Those actions, O'Callaghan alleges, violate the Fourth Amendment, the Eighth

Amendment, and the equal protection and due process clauses of the Fourteenth Amendments.

Before the court are the parties' cross-motions for summary judgment and two other

motions filed by O'Callaghan. As explained below, the City's and Rapid Response's summary

judgment motions should be GRANTED, and O'Callaghan's motions should be DENIED.

## BACKGROUND

O'Callaghan is unhoused and lives part-time on an undeveloped parcel of private

property at 2831 SE Grand Avenue, Portland, Oregon (the Property). The Property is a steep

hillside underneath the Ross Island Bridge's east bank between Grand Avenue and the

Springwater Corridor. O'Callaghan, who has built two wooden structures on the property that he

uses for storage and to live in, has lived on and off at the Property for 10 years and spent about

two months there in 2021. (Beyer Decl. Ex. 2 (Pl.'s Dep. 15:12-18, 19:21–20:16, 27:15-16,

_____

[1]    As noted in more detail later, the court appointed O'Callaghan *pro bono* counsel for the
limited purpose of responding to the court's request for supplemental briefing on his procedural
due process argument. O'Callaghan represented himself in this action in all other regards.

36:16-21, 48:24–49:11), ECF No. 61-1; McFate Decl. Ex. A (Pl.'s Dep. 37:7-17), ECF No. 64.)

Despite O'Callaghan acknowledging at his deposition in July 2022 that he does not own the

Property, does not know the owner, and does not possess title to the Property, he contends that he

owns the Property. (Beyer Decl. Ex. 2 (Pl.'s Dep. 18:6–19:3), ECF No. 61-1.)

The City has a Homelessness and Urban Camping Impact Reduction Program (HUCIRP),

which is meant to "reduce the impact of unsanctioned urban camping within the City of Portland

through responsive community education, collaboration, coordination with outreach providers,

and risk mitigation." (McFate Decl. ¶ 4 & Ex. C (attaching Homelessness and Urban Camping

Impact Reduction Program Strategic Plan 2019-2021), ECF No. 64.) Included in HUCIRP is the

City's Campsite Removal and Property Storage Policy (the Policy). The City contracts with

Rapid Response and other companies to remove campsites and clear and store property as

permitted by the Policy. The Policy lists factors it considers for identifying and removing

campsites, how notice will be provided to campsite occupants, how and where personal property

of the occupants will be stored, and how personal property may be retrieved. The Policy requires

that 72-hours' notice be provided to campsite occupants. The notice must include: (1) the hours

of operation and phone number of the warehouse where removed personal property will be

located; (2) the process for claiming or retrieving removed personal property; (3) that removed

personal property will be retained for 30 days; (4) that no law enforcement will be involved in

the retrieval process; and (5) available social services. Removed personal property is stored for at

least 30 days, which may be extended in extenuating circumstances. (McFate Decl. ¶¶ 2, 4-5, 11-

12 & Ex. C, ECF No. 64.)

Page 3  – FINDINGS AND RECOMMENDATION

After the City identifies a campsite for removal, Rapid Response posts notices around the identified campsite. A notice must inform occupants and the public that clean-up will occur in "not less than forty-eight (48) hours but within ten (10) days," removed personal property will be held for 30 days, that pick up is by appointment only, and occupants must call to schedule a time to retrieve their removed personal property. Rapid Response returns to the campsite within the appropriate timeframe to perform the campsite cleanup, which includes disposing of trash, hazardous materials, sharps, biological waste, and other debris. As part of the cleanup process, Rapid Response must collect, inventory, and photograph certain items of personal property on City-provided inventory forms containing a project number, location description, item descriptions, and site map. Photographs of the inventoried items are catalogued by date, time, and place. Removed personal property is transported to a City-provided storage facility and may be retrieved by persons making a credible claim that the property belongs to them. (Hamel Decl. Ex. 1 at 21-23, ECF No. 60-1.) Under the Policy, Rapid Response must retain, regardless of condition, tents, sleeping bags, blankets, boots, shoes, backpacks, purses, credit/debit/Oregon Trail cards, medications, forms of personal identification, bikes and bike trailers, tools, and cellphones or electronic devices. Rapid Response is not required to keep or retain, among other things, perishable food or beverages, water-logged or soiled/stained/infested items (aside from required items), shopping carts, hazardous materials, or "building materials that appear to be found or repurposed materials, not originally designed to be used as building materials, such as cardboard and pallets." (McFate Ex. C at 8-10, ECF No. 64.)

On May 7, 2021, after receiving the assignment from the City, Rapid Response posted a notice of campsite cleanup in the Oregon Department of Transportation (ODOT) right-of-way

under the Ross Island Bridge. The May 7 Notice (First Notice) was posted at 3:45 p.m. and

stated:

NOTICE:
ILLEGAL CAMPSITE

It is the policy of the City of Portland to provide notice before removing shelters erected at illegal campsites. This campsite will be cleared no less than Forty-eight (48) hours after and within ten (10) days of: 5/7/21.

Shelter is available in Portland through several nonprofit service agencies. For more information about shelter and other services, call

2-1-1

All property confiscated from this camp will be maintained by Rapid Response Bio Clean, at their storage facility, for a minimum of thirty (30) days. Property owners may inquire with Rapid Response Bio Clean to attempt to locate confiscated property: (503) 387-1336; Monday through Friday, 8:00 a.m. to 4:30 p.m. or Saturday, 10:30 a.m. to 2:30 p.m. Property unclaimed thirty (30) days after 5/10/21 will be destroyed.

(Angel Decl. ¶ 3 & Ex. 4, ECF No. 62.)

To ensure that a campsite Rapid Response is asked to clear is within the City's

jurisdiction, ODOT's jurisdiction, or the jurisdiction of other entities with whom it has

contracted, Rapid Response verifies the location of the campsite using portlandmaps.com.

According to portlandmaps.com and Multnomah County property records, there are two narrow

parcels bearing the 2831 SE Grand Avenue property address. Title to the first parcel is held by

the Estate of Corwin E. Stevens, and title to the second parcel is owned by Outfront Media LLC;

both parcels are zoned as commercial mixed use/heavy industrial land. (McFate Decl. ¶ 3 & Ex.

B, ECF No. 64; Angel Decl. ¶ 4 & Ex. 5, ECF No. 62.) Immediately east of the OutFront Media

parcel is ODOT's right-of-way for Grand Avenue. (Angel Decl. ¶ 4 & Ex. 5, ECF No. 62.)

Rapid Response returned to the ODOT right-of-way on May 14, 2021, and began clearing trash and waste. Rapid Response contends that its workers restricted their cleanup to the ODOT right-of-way and did not clear items from the privately owned parcels under the Ross Island Bridge. According to Rapid Response, the workers did not perform campsite cleanup at the Property, did not remove O'Callaghan's structures, and did not remove large plywood or salvageable wood. On May 14, 2021, Rapid Response re-posted a notice of campsite cleanup in the ODOT right-of-way because it needed more time to complete the campsite cleanup. (Angel Decl. ¶¶ 4-5, Exs. 5-6, ECF No. 62.)

Several days later, on May 19 to 20, 2021, Rapid Response workers returned and completed clearing the ODOT right-of-way of trash and waste. Rapid Response again confined its cleanup to ODOT's right-of-way area, and according to Rapid Response, did not clear the private property parcels, and did not remove any large plywood or salvageable wood from the area. (Angel Decl. ¶ 7 & Ex. 7, ECF No. 62.)

After the First Notice, around mid-May 2021, O'Callaghan saw a Rapid Response truck parked near the Property and four Rapid Response workers cleaning in the area. O'Callaghan asked one of the workers what he was doing, to which the worker responded: "Cleaning up." O'Callaghan recalled that Rapid Response spent two to three days cleaning up after the First Notice was posted. On one of the days that Rapid Response was cleaning, O'Callaghan was present for part of the day, then left in the afternoon for 1.5 hours to run an errand. When he returned, 20 sheets of 5/8 inch plywood, several 2x4s, and a 50-pound coffee table were gone. O'Callaghan did not see who removed his materials, but believes that Rapid Response was responsible. O'Callaghan does not know the dollar value of his missing materials; he has no

photos of them; he states that he obtained the plywood and 2x4s free from a construction site; and he is unsure where he obtained the coffee table. (McFate Decl. Ex. A (Pl.'s Dep. 20:19–21:6, 22:24–23:25, 30:12–31:13; 50:9-12, 55:19–56:1, 57:1-17, 58:20-23; 66:25-67:5), ECF No. 64.)

After O'Callaghan's materials went missing, he called the number on the First Notice twice to attempt to retrieve his personal property; he did not receive a return phone call. He did not communicate further with Rapid Response or the City about his missing materials. (McFate Decl. Ex. A (Pl.'s Dep. 28:17–29:16; 59:19-24, 65:4-20), ECF No. 64.)

On May 24, 2021, Rapid Response posted a campsite cleanup notice (Second Notice) on the tree above the privately owned property at 2831 SE Grand Avenue and stapled a notice to a sheet of plywood near O'Callaghan's structure over a sign that read "Private Property - No Trespassing." (Angel Decl. ¶ 8 & Ex. 8, ECF No. 62; McFate Decl. Ex. A (Pl.'s Dep. 26:17-23, 48:11-21, 50:13-18, 50:23–51:80), ECF No. 64.) The Second Notice was posted at 1 p.m. and stated:

NOTICE:
ILLEGAL CAMPSITE

It is the policy of the City of Portland to provide notice before removing shelters erected at illegal campsites. This campsite will be cleared no less than Forty-eight (48) hours after and within ten (10) days of: 5/24/21.

Shelter is available in Portland through several nonprofit service agencies. For more information about shelter and other services, call

2-1-1

All property confiscated from this camp will be maintained by Rapid Response Bio Clean, at their storage facility, for a minimum of thirty (30) days. Property owners may inquire with Rapid Response Bio Clean to attempt to locate confiscated property: (503) 387-1336; Monday through Friday, 8:00 a.m. to 4:30 p.m. or Saturday, 10:30 a.m. to 2:30 p.m. Property unclaimed thirty (30) days after 5/26/21 will be destroyed.

(Angel Decl. ¶ 8 & Ex. 8, ECF No. 62.) Despite the May 24, 2021 posting, Rapid Response did not return to that location or clear any personal property associated with the Second Notice. The Second Notice was posted by mistake. (*Id.*)

At no point in May 2021 was O'Callaghan asked to leave his campsite and his structures were not removed from the property. (Beyer Decl. Ex. 2 (Pl.'s Dep. 32:12-14), ECF No. 61-1; McFate Decl. Ex. A (Pl.'s Dep. 27:19-22), ECF No. 64.)

O'Callaghan filed this § 1983 civil rights lawsuit on May 25, 2021, and filed a First Amended Complaint (FAC) on June 18, 2021.[2]  In the FAC, O'Callaghan alleges that defendants' actions violate the Fourth Amendment, Eighth Amendment, and equal protection and due process clauses of the Fourteenth Amendment. O'Callaghan contends that defendants have removed him from campsites, repeatedly confiscated his personal property, and continue to monitor, harass, and target him for campsite sweeps. The FAC alleges conduct from 2007 to 2011, 2016, 2018, and 2021. (*See generally* FAC, ECF No. 7.) Defendants deposed O'Callaghan on July 12, 2022.[3]  (McFate Decl. ¶ 17, ECF No. 64.)

Defendants now move for summary judgment, contending that the claims concerning conduct before 2021 are untimely, and that O'Callaghan fails to create a genuine issue of material fact on any claim arising out of the May 2021 incidents. O'Callaghan also moves for

---

[2]    The court treated O'Callaghan's Motion to Amend as his First Amended Complaint and renamed it as such. (FAC, ECF No. 7.) On September 17, 2021, O'Callaghan filed another copy of this pleading, with the addition of proof of service. (Pl.'s Mot. Amend, ECF No. 11.) The two pleadings do not otherwise differ.

[3]    The City served O'Callaghan with interrogatories and requests for production in June 2022; he did not respond. (McFate Decl. ¶¶ 15-16, ECF No. 64.)

summary judgment, contending that defendants have failed to contest the facts as he describes them. In O'Callaghan's view, he has offered affidavits that support his version of the facts and he is entitled to judgment as a matter of law.

## LEGAL STANDARDS

A party is entitled to summary judgment under Rule 56 "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)); FED. R. CIV. P. 56(a). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment involves burden shifting. Defendants the City and Rapid Response, as the moving parties without the ultimate burden of persuasion at trial, have "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). To carry that burden, defendants "must persuade the court that there is no genuine issue of material fact." *Id*. If defendants carry their burden of production, plaintiff O'Callaghan, as the non-moving party, must produce evidence to support his claim, *id*. at 1103, and must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand

summary judgment."). If O'Callaghan fails to make this showing, then defendants are entitled to summary judgment. *Nissan Fire & Marine Ins.*, 210 F.3d at 1103.

Where cross-motions for summary judgment have been filed, the court applies the same standard; that is, each motion is considered on its merits. *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885 (9th Cir. 2019.) The court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and in opposition to both motions, before ruling on each of them." *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015).

Even though Callaghan is self-represented (for the most part), and the court therefore construes his *pro se* filings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), he is nevertheless held to the same standards in responding to a motion for summary judgment and "should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

## DISCUSSION

Defendants each move for summary judgment arguing that O'Callaghan's claims are untimely, except for incidents in May 2021. Examining just the events in May 2021, defendants contend that O'Callaghan has not created a genuine issue of material fact for trial and that they are entitled to judgment as a matter of law. O'Callaghan responds by disputing the accuracy of defendants' evidence. He contends that defendants' photographs of the campsite cleanup establish that they trespassed and took his materials. According to O'Callaghan, he now owns the private property on which he has built structures and stores his belongings, and defendants have

violated his constitutional rights.[4] (Pl.'s Resp. at 3, ECF No. 114; Pl.'s Reply at 2, ECF No. 125.)

In his cross-motion for summary judgment, O'Callaghan contends that defendants have presented no evidence to refute his facts, and that trial is appropriate. In their responses to O'Callaghan's motion, defendants argue that he has not presented sufficient, admissible evidence that summary judgment in his favor is appropriate, and that his motion should be denied.

Because O'Callaghan does not direct specific arguments toward each defendant, the court combines its discussion of defendants' motions, then turns to O'Callaghan's cross-motion for summary judgment. The court begins its analysis with the statute of limitations, then addresses the constitutional arguments.

## A.    *Defendants' Motions – Statute of Limitations*

Claims asserting constitutional violations against the government are pursued under 42 U.S.C. § 1983. Section 1983, however, lacks a statute of limitations. Federal courts thus apply the relevant state's statute of limitations for personal injury actions. *Maldonado v. Harris*, 370 F.3d 945, 954-55 (9th Cir. 2004). In Oregon, the applicable statute of limitations for a § 1983 action is two years from the date that the cause of action accrues. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002) (holding that the two-year statute of limitations in ORS § 12.110

---

[4]    O'Callaghan also argues that the City has engaged in continuous violations, including throwing rocks, shining a searchlight, and three unlawful sweeps. (Pl.'s Resp. at 5, ECF No. 114.) After filing this litigation, he alleged that additional violations have occurred, including a head in the floor door, damage to his bicycle, and fence removal on Dwane's property. (*Id.*) O'Callaghan argues that the court's denial of discovery denied him due process and that he has pointed out six potential acts of fraud. After conducting an in-person hearing and allowing O'Callaghan to submit additional briefing, the court denied his request to reopen discovery in a January 24, 2023 Order. (Order, ECF No. 99.) The court declines to address plaintiff's arguments concerning that ruling further.

applied to § 1983 claims); ORS § 12.110 (providing that actions for personal injury must be commenced within two years).

As defendants correctly argue, any claims asserted by O'Callaghan that are alleged to have occurred before May 25, 2019, or two years before his complaint was filed, are barred by the statute of limitations. *Sain*, 309 F.3d at 1139. On pages two through five of the FAC, O'Callaghan describes events in 2007 through 2016; on pages seven and eight, he identifies events in 2007 and 2018; and on page 11, he attaches a chronology that lists events from May 2009 to December 2011. (FAC, ECF No. 7.) Those events occurred before May 25, 2019, and are time-barred.[5] And O'Callaghan offers no plausible or persuasive argument for tolling the statute of limitations or that his claims are otherwise timely. Accordingly, summary judgment should be entered as to any claim arising out of events before May 25, 2019. The court considers only events after May 25, 2019, in evaluating O'Callaghan's constitutional claims on the pending motions.[6]

B.    ***Defendants' Motions – Merits – Constitutional Claims***

O'Callaghan brings four claims under 42 U.S.C. § 1983 against defendants. Section 1983 creates a private right of action for a plaintiff alleging that a state actor violated a person's "rights, privileges, or immunities secured by the Constitution." To state a claim under § 1983, a

---

[5]    Rapid Response points out that O'Callaghan acknowledged during his deposition that any claims relating to events in 2016 are time-barred. (Beyer Decl. Ex. 2 (Pl.'s Dep. 64:2-6), ECF No. 61-1.)

[6]    O'Callaghan argues that his claims are not time-barred because the statute of limitations does not begin until fraud is discovered. (Pl.'s Resp. Inj. Relief at 7, ECF No. 127.) The FAC does not contain fraud claims and he has not obtained the court's permission to bring fraud claims; his argument therefore is rejected.

plaintiff must allege that: (1) the conduct complained of deprived him of an existing "right secured by the Constitution or laws of the United States" and (2) the alleged violation was committed by a state actor or person acting under the "color of state law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). A private party like Rapid Response may be viewed as a "state actor" if its conduct is fairly attributable to the state. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999); *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (holding that state action exists where there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself") (quotation marks omitted). Rapid Response does not contest that its contract with the City makes it a state actor for purposes of O'Callaghan's § 1983 claims asserted here. Defendants do challenge, however, each of O'Callaghan's constitutional claims.

## 1.  Eighth Amendment

The Eighth Amendment's prohibition of "cruel and unusual punishments" applies typically "after conviction and sentence." *Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Importantly, the Ninth Circuit's holding in *Martin v. City of Boise*, 920 F.3d 584, 616 (9th Cir. 2019), that the Eighth Amendment's prohibition on cruel and unusual punishment "prohibits the imposition of criminal penalties for sitting, sleeping, or lying outside on public property for homeless individuals who cannot obtain shelter" has now been abrogated by the Supreme Court. *City of Grants Pass v. Johnson*, 144 S. Ct. 2202, 2211 (2024) (rejecting the Ninth Circuit's "*Martin* experiment"). In any event, O'Callaghan admits he was not arrested, fined, detained, or cited because of any

campsite cleanup activities in May 2021. (Beyer Decl. Ex. 2 (Pl.'s Dep. 27:19-24, 32:12-14), ECF No. 61-1.) Because he has not been subjected to any criminal penalties or citations that could become criminal offenses, his Eighth Amendment claim fails as a matter of law, and defendants' motions on this claim should be granted.

### 2.    Equal Protection

The equal protection clause of the Fourteenth Amendment provides that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend. XIV § 1. Equal Protection "requires that all persons subjected to . . . legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008). O'Callaghan may establish an equal protection claim by showing that defendants acted with an intent or purpose to discriminate against him based on his membership in a protected class. *Lee*, 250 F.3d at 686-87. Legislative classifications involving suspect classes, such as race or national origin, receive "strict scrutiny" and a defendant's actions "will only be sustained if they are suitably tailored to serve a compelling state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). Classifications based on gender or illegitimacy also receive heightened scrutiny and will be sustained if "substantially related to a sufficiently important government interest." *Id.* at 441. However, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Id.* at 440. Alternatively, O'Callaghan may attempt to establish his equal protection claim by showing that he is a "class of one" in that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of*

*Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). The rational basis inquiry is very lenient, and government action will pass this level of scrutiny if there is any conceivable basis to support it. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001).

In the FAC, O'Callaghan alleges that the property line was delineated, that defendants removed his building materials, destroyed three of his homes on private property, and continue to threaten to remove his property. (FAC at 6, ECF No. 7.) It is hard to discern what type of equal protection claim O'Callaghan is attempting to establish based on the allegations in the FAC.

Rapid Response interprets O'Callaghan's FAC as an assertion of an equal protection claim based on a protected class. It argues that it fails for two reasons: (1) O'Callaghan has not alleged and cannot establish that he is a member of a protected class; and (2) he has not alleged and has not shown that Rapid Response acted with a discriminatory purpose. The court agrees.

As Rapid Response argues, the Ninth Circuit has not recognized that houseless persons are a class entitled to heightened scrutiny, and the Supreme Court has declined to apply heightened scrutiny when evaluating classifications based on housing status or wealth. *Lindsey v. Normet*, 405 U.S. 56, 73 (1972) (housing); *Kadrmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 458 (1988) (wealth). *See also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1108-09 (E.D. Cal. 2012) (collecting cases). Even if houselessness could be entitled to heightened scrutiny, O'Callaghan's equal protection claim fails. He has not gone beyond his pleadings and identified evidence to show how Rapid Response acted with a discriminatory purpose in clearing the ODOT right-of-way. *Lee*, 250 F.3d at 687 (holding that discriminatory purpose means that the

decisionmaker "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group" (simplified)).

If O'Callaghan is bringing a "class of one" equal protection claim, Rapid Response also is entitled to summary judgment. Examining the events in mid-May 2021, O'Callaghan has not come forward with evidence that he was singled out or treated differently than any other similarly situated persons. *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) (holding that plaintiff must show that comparator was similarly situated in all material respects); *see also Jennings v. City of Stillwater*, 383 F.3d 1199, 1213-14 (10th Cir. 2004) (stating that class-of-one plaintiff must provide a "specific and detailed account" of other individuals' preferential treatment). O'Callaghan has not identified evidence to support his claims that Rapid Response has singled him out for discriminatory treatment in May 2021 and he has not identified a similarly situated comparator. Rapid Response is therefore entitled to summary judgment on the equal protection claim.

Also, because O'Callaghan has not established a genuine issue of material fact that his equal protection rights under the Fourteenth Amendment were violated, he likewise has not created an issue of fact under *Monell* on this claim against the City. The City's motion should be granted.

### 3.    Fourth Amendment

The Fourth Amendment protects "persons, houses, papers, and effects, against unreasonable searches and seizures." "A seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). O'Callaghan alleges in his FAC that his rights were

violated because it was unreasonable to "destroy a structure on private property using a camp ordinance which only applies on PUBLIC property and gives no authority for destruction[.]" (FAC at 7, ECF No. 7.) He alleges that structures built on the Property were destroyed and contends that Rapid Response seized his plywood, 2x4s, and coffee table that he kept at the Property.

As to the destruction of O'Callaghan's structures, Rapid Response points out that O'Callaghan admitted in his deposition that his structures were not destroyed in May 2021. (Beyer Decl. Ex. 2 (Pl. Dep. 32:12-14), ECF No. 61-1.) With that admission, Rapid Response has carried its burden of production, and because O'Callaghan has failed to respond with evidence to support his allegation that Rapid Response destroyed his structures, Rapid Response is entitled to summary judgment on that issue.

As to the unreasonable seizure of O'Callaghan's building materials and coffee table that he asserts were on private property, Rapid Response has likewise carried its burden of production that its May 2021 cleanup was limited to public property. Rapid Response points to evidence that, before Rapid Response begins a campsite cleanup, it verifies that the campsite location is City-owned or ODOT-owned, and thus covered by its contract with the City. (Angel Decl. ¶ 4, ECF No. 62.) To ensure that those site locations are on public property, Rapid Response verifies ownership using a website, portlandmaps.com. (*Id.* ¶¶ 4-5.) The website shows that there are two narrow, privately-owned parcels next to the ODOT right-of-way. (*Id.* Ex. 5.) Ownership of the private parcels was confirmed by Rapid Response with Multnomah County property records. (Rogers Decl. Exs. 1-2, ECF No. 124.) Rapid Response has further shown that its workers use GPS technology during the cleanup process to "ping" their location to the

portlandmaps.com website to ensure that the workers clean only public property. (Angel Supp. Decl. ¶¶ 7-9, ECF No. 123; Angel Decl. Ex. 5 (showing "pinged" locations of areas cleaned in May 2021), ECF No. 62.)

Sara Angel, a technician for Rapid Response who was present for the May 2021 cleanup, states that Rapid Response limited its cleanup activities to the public ODOT right-of-way. (Angel Decl. ¶¶ 4-7, ECF No. 62.) That statement is supported by attached photographs, documenting that the cleanup was limited to the ODOT right-of-way. Rapid Response also provides maps reflecting the boundaries of the public and private property along SE Grand Avenue, showing that the ODOT right-of-way extends west over a concrete barrier until it meets the private property line for the Property. (*Id.* Ex. 5.)

In the face of Rapid Response's satisfaction of its burden of production, O'Callaghan fails to "identify with reasonable particularity" evidence to preclude summary judgment. *See Keenan*, 91 F.2d at 1279. O'Callaghan does, in deposition testimony, say that his personal property was removed from private property. (McFate Decl., Ex. A (Pl.'s Dep. 17:22-18:3; 20:19-21; 55:19-56:1), ECF No. 64.) Although his deposition testimony may be sufficient to permit a reasonable inference that his personal property was removed, it is insufficient to show that his personal property was removed from *private property*.

The property line is disputed by O'Callaghan as a response to Angel's declaration—he contends that the western limit of ODOT's right-of-way is the concrete barrier. (Pl.'s Resp. Mot. Summ. J. at 3, 21, ECF No. 114; Pl. Resp. Mot. Inj. Relief at 6-7, ECF No. 127.) He argues that all property west of the concrete barrier is private property and that Rapid Response's information about the width of ODOT's right-of-way is inaccurate because one of the tax lots

contains an incorrect address. That argument, based on O'Callaghan's unsworn and uncorroborated belief, is the extent of his response. Given that O'Callaghan offers the court no evidence for the location of the coffee table or the building materials (other than the vague allegation in his FAC that the coffee table was "blocking the entrance"), he fails to meet his burden of production that Rapid Response seized his personal property located on *private property*—a factual claim that is indispensable to his Fourth Amendment claim.[7]

For all those reasons, O'Callaghan has failed to provide evidence satisfying his burden of production that there is a triable issue that Rapid Response seized his building materials and coffee table on private property. Because there is no triable issue of fact, O'Callaghan cannot prevail on Fourth Amendment claim, and Rapid Response's motion for summary judgment should therefore be granted. And because there is no triable issue of fact on his underlying constitutional violation, it follows that there is no *Monell* liability, *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986), and the City should prevail on its motion for summary judgment.

---

[7]    The court must construe O'Callaghan's *pro se* filings liberally. *Hebbe*, 627 F.3d at 342. In this case, however, O'Callaghan's claim explicitly relies on an assertion that Rapid Response's authority was limited to public property and goes so far as to state that case law concerning the possessions of the houseless on public property is inapplicable. (FAC at 7 ("Note: *Yeager* [*v. City of Seattle*, Case No. 2:20-cv-01813-RAJ, 2020 WL 7398748 (W.D. Wash. Dec. 17, 2020)] was on public property. non [*sic*] applicable."), ECF No. 7.) *Yeager* distinguishes yet relies on *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1030 (9th Cir. 2012), in which the Ninth Circuit held that the houseless have a protectable possessory interest in their "unabandoned legal papers, shelters, and person effects," and that collecting and destroying unabandoned personal possessions was unreasonable under the Fourth Amendment. *See also Garcia v. City of Los Angeles*, 11 F.4th 1113, 1124 (9th Cir. 2021) ("[T]he government may not summarily destroy the unabandoned personal property of homeless individuals that is kept in public areas."). Given O'Callaghan's claim, the court does not apply the analysis in *Lavan*, which does not address private property rights.

### 4.    Procedural Due Process

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST., amend. XIV, § 1. "Any significant taking of property by the State is within the purview of the Due Process Clause." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). To establish a due process claim, O'Callaghan must show (1) his asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property; and (2) what additional process was due. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1031 (9th Cir. 2012). Due process is not a "technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). Due process is flexible and "calls for such procedural protections as the particular situation demands." *Id.*

O'Callaghan alleges that he has "been 'posted' more than 25 times for camping violations and has been threatened with property disposal" 20 times on private property. (FAC at 8, ECF No. 7). O'Callaghan adds:

> The ordinance is silent on confiscation. Also it only speaks to public property not private. In the prior cases the court ignored the private property question in its entirety. … All these postings no citation no judicial access no Due Process.

(*Id*.) The court understands O'Callaghan to allege that defendants have, without providing any due process, posted illegal campsite notices 20 times on private property where he has resided, threatening to remove his belongings. That, he argues, violates his constitutional due process rights.

In their motions for summary judgment, however, the City and Rapid Response understood that O'Callaghan alleged that he was deprived of due process for personal property

that was taken. (City's Mot. Summ. J. at 11-12, ECF No. 63; Rapid Response's Mot. Summ. J. at 11, ECF No. 59.) The court asked for supplemental briefing on O'Callaghan's procedural due process claim, explaining that the notice lacked any information about how to challenge the "illegal campsite" designation, and the reader of the notice who has a campsite, even if on private property, would either have to remove his or her shelter within at least 48 hours or have the shelter confiscated and then arrange for its retrieval. And the Policy applies to public property and is silent about private property (and as to how notices are posted on or near campsites on private property). Moreover, the court pointed out that the private interest O'Callaghan asserts is his interest of not being subjected to notice telling him that his shelter and belongings, which are not on public property, would be removed unless he removed them first. The consequence of such a notice is that O'Callaghan would have to move his belongings to avoid their confiscation, or live in fear that they would be confiscated. Given that, the Court asked defendants whether posting illegal-campsite notices near or on the Property violated O'Callaghan's procedural due process rights.[8] (Order for Supp. Briefing, ECF No. 143.)

Defendants emphasize that the threshold requirement for a procedural due process claim is the "deprivation of a constitutionally protected liberty or property interest." *Miranda v. City of Casa Grande*, 15 F.4th 1219, 1224 (9th Cir. 2021). The City acknowledges that, in the absence of a deprivation of a property interest, a threat of an injury can be justiciable. Yet the City points out that the threat must be "real and immediate." *Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1273 (9th Cir. 1981). So the City argues that the interest in not being repeatedly

---

[8]    Following a July 1, 2024, telephone status conference, the court appointed *pro bono* counsel for the limited purpose of responding to the court's request. (ECF No. 151.)

Page 21  – FINDINGS AND RECOMMENDATION

subject to notice of removal of personal possessions on private property is not a constitutionally protected interest for the purpose of the Fourteenth Amendment's due process protections. (City Supp. Br. at 6, ECF No. 145.)

O'Callaghan responds that there is a genuine issue of material fact that his personal property was removed, and that, when the *Mathews v. Eldridge* factors are considered, he was not afforded procedural due process. *Mathews*, 424 U.S. at 332 (The factors are (1) private interest affected by the official action; (2) risk of an erroneous deprivation that interest posed by the procedure and the probable value of more or different procedural safeguards; and (3) the governmental interest, including the function involved and the fiscal and administrative burdens imposed by other procedures.). Mainly he contends that his sole possessions are a strong private interest and that the City has no interest in posting a removal notice on private property. And, he points out, providing a phone number on the notice to report or contest that it was erroneously posted on private property is a minimal burden on the government. Even so—and the court need not decide the procedural interests at stake here—there is no genuine issue of material fact that he was deprived of his personal possessions on private property or that there was a "real and immediate" threat of deprivation. As to deprivation of personal possessions on private property, the court refers to its Fourth Amendment discussion about O'Callaghan's lack of showing that his personal possessions were on private property. He likewise fails to establish that his threat-of-deprivation claim is justiciable—there is no triable issue of fact presented by O'Callaghan that threat of deprivation of his personal possessions by the City or Rapid Response is certain and immediate. *See Portland Police Ass'n*, 658 F.2d at 1273 ("Without such immediacy and certainty of injury the dispute is not ripe; it has not matured sufficiently to warrant judicial intervention."

(quotation marks omitted)). Consequently, defendants' motion for summary judgment on this claim should be granted, including the City's motion on the basis that it lacks *Monell* liability.

**C.    *O'Callaghan's Cross-Motion for Summary Judgment***

O'Callaghan argues that he is entitled to summary judgment because defendants have not opposed or contested his version of the facts, as stated in a June 4, 2021 Order. (Pl.'s Cross Mot. Summ. J. at 1, ECF No. 75.) He contends that he has offered affidavits that support his allegations, and that a jury should hear his claims. (*Id.*) In their responses, defendants correctly clarify that they have denied all the allegations in the FAC in their Answers, and they were not required to separately respond to or refute the facts as they were stated in the June 4, 2021 Order. O'Callaghan's operative pleading is the FAC, not the court's order. (Def. Rapid Response's Opp'n to Cross-Mot. Summ. J. at 4 n.2, ECF No. 106; Def. City's Resp. Cross-Mot. Summ. J. at 4, ECF No. 104.)

Defendants also argue that O'Callaghan has not satisfied his initial burden of production under Rule 56 to come forward with evidence showing an absence of an issue of fact on material elements of his claims that would entitle him to summary judgment. (Def. City's Resp. Cross-Mot. Summ. J. at 4-5, ECF No. 104; Def. Rapid Response's Opp'n to Pl.'s Cross-Mot. Summ. J. at 4-6, ECF No. 106.) According to defendants, the evidence proffered by O'Callaghan relates only to time-barred events which fails to satisfy his burden of production, and that his motion must be denied. The court agrees.

Under Rule 56, where the moving party will bear the burden of proof at trial, it has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *C.A.R. Transp.*

*Brokerage Co., v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). In such cases, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; FED. R. CIV. P. 56(c). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything[.]" *Nissan Fire & Marine*, 210 F.3d at 1102. Around the time O'Callaghan filed his cross-motion for summary judgment, he filed two documents that the court construes as filed in support of his cross-motion for summary judgment. (ECF Nos. 75, 77, 78.)

In a document entitled "Compliance with Court Order" (ECF No. 77), O'Callaghan asks the court to review his submissions, and argues that he has presented eight points of potential fraud. (*Id.* at 2.) In the 33 pages that follow, he describes eight events in 2009, 2011, 2013, 2016, and 2017, that he says are fraud, including a sweep of private property at 3rd and Ivon, theft of his property at City Hall, warrants for his arrest, stealing his property, police ignoring an exclusion order, arresting him, stating that he was digging a tunnel on park property, and forcing him to give up his right to a trial. (*Id.* at 3-33.) Next, in a 44-page document entitled "Affidavits," O'Callaghan attaches two affidavits. One affidavit he signed in 2012 describes events in 2009 and 2011. (Pl.'s Affidavits at 1-15, ECF 78.) A second affidavit he signed in 2018 describes events in 2016 and includes "Factual Statements." (*Id.* at 16-44.)

The events described in the "Compliance" and "Affidavits" do not entitle O'Callaghan to summary judgment for three primary reasons. One, the FAC does not contain fraud claims and O'Callaghan did not obtain the court's permission to add fraud claims. Two, those submissions relate to events before May 25, 2019, and are untimely; as discussed above, the court will not

consider time-barred events. And three, because those submissions do not relate to the events in May 2021, they are not relevant, and O'Callaghan has not satisfied his burden of production to show that there is an absence of a genuine issue for trial and that he is entitled to judgment as a matter of law. Accordingly, his motion for summary judgment should be denied. *Nissan Fire & Marine*, 210 F.3d at 1102-03; *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1149 (S.D. Cal. 2020) (denying summary judgment motion where moving party produced no evidence to support it; defendant was not required to come forward with evidence to refute it; "simply saying the nonmoving party has no evidence is not enough" to satisfy initial summary judgment burden of production (simplified)), *appeal dismissed* 2021 WL 5823707 (9th Cir. 2021).

**D.    *O'Callaghan's Motion for Injunctive Relief***

In this motion, O'Callaghan argues that the City has illegally transferred power to Rapid Response to post illegal campsites, and that he has been denied due process because Rapid Response's powers lack legal authority. (Pl.'s Resp. Mot. Inj. Relief at 2, ECF No. 127.) He contends that by having Rapid Response engaged in campsite "sweeps," the City has illegally transferred its executive law enforcement authority to a private party. (Pl.'s Mot. Inj. Relief, ECF No. 115.) The City's contract with Rapid Response transfers police powers such as issuing citations that, in O'Callaghan's view, violate state law. (*Id.* at 2; Pl.'s Reply to Mot. Inj. Relief at 2, ECF No. 126.) He asks that the City be enjoined from unlawfully transferring its law enforcement powers to Rapid Response, relying on *Weyerhaeuser Co. v. Klamath County, Or.*, 151 F.3d 996 (9th Cir. 1998).

Page 25  – FINDINGS AND RECOMMENDATION

Rapid Response counters (and the City joined, ECF No. 120) that under its contract with the City, it posts notices that the City has designated as illegal, then returns to perform cleaning, inventorying, and storing the materials collected. (Def. Rapid Response's Resp. at 2-3, ECF No. 118.) It also contends that its contract with the City does not authorize it to perform law enforcement activity or functions. (*Id.* at 2.) Under its contract with the City, Rapid Response contends that it has been given a narrow scope of work to perform and that the City has retained all law enforcement functions. Pointing to its contract with the City, Rapid Response highlights that its workers are forbidden from handling "situations that are dangerous" and must instead call the Portland Police Bureau (PPB), that weapons and contraband must be reported to PPB, and that only PPB may exclude trespassers or persons from illegal campsites. (Abere Decl. Ex. 1 at 21-23, ECF No. 119.) Rapid Response also argues that the City may enter contracts with private entities, so long as it does not "contract away" its police powers. *See generally Eckles v. State,* 306 Or. 380, 399 (1988) (*en banc*) (describing that police power describes a government body's general plenary power to legislate). Because the City has not delegated to it any law enforcement activities, in Rapid Response's view, O'Callaghan's motion for injunctive relief must be denied.

In a document entitled "Information," O'Callaghan alleges that the Property was raided on April 12, that bags of clothing and food were taken, and that his bicycle was vandalized. (Information at 2, ECF No. 117.) He asserts that he remains a target by the City, that the City has engaged in fraud, and that he was unlawfully arrested. (*Id.* at 3.) O'Callaghan lists 10 violations, including rock throwing, police searchlight, three postings with theft and trespass, "head in floor, bike hammer, Dwane removed, no posting April 12," and a "2nd bicycle attack." (*Id.* at 4.) The list contains no other details. (*Id.*) The Information also includes an April 10, 2023, article

concerning "sweeps," and several photos dated April 12 and 13, 2023. (*Id.* at 5-14.) Because the Information was filed a few days after his motion for injunctive relief, the court construes it as filed to support his motion for injunctive relief.

The Information fails to refute the contractual provisions provided by defendants. The photographs do not show that Rapid Response performs any law enforcement activity, and the remaining portions of the document are O'Callaghan's subjective beliefs that defendants are responsible for the alleged wrongs.[9] Again, he was not arrested, fined, or restrained by Rapid Response or the City during the May 2021 campsite cleanup. Accordingly, because O'Callaghan has not shown that the City has transferred any law enforcement authority to Rapid Response, his motion for injunctive relief should be denied.[10]

---

[9]     O'Callaghan also argues in a response that the Ordinance violates his due process rights when there is no criminal violation. (Pl.'s Resp. Inj. Relief at 2, ECF No. 127.) That argument is undeveloped. The court addressed other due process arguments above when resolving the summary judgment motions.

[10]    O'Callaghan's citation of *Weyerhaeuser* is inapt. That case determined that "a sheriff lacks the express or implied authority under Oregon law to enter into an agreement to provide security services for private entities." *Weyerhaeuser*, 151 F.3d at 1000. He points to no facts showing that Rapid Response is providing security services for the City in this case.

In a document entitled "Request," O'Callaghan asks the court to consider newspaper articles, contending that they confirm "disposal of personal property." (Request at 2, ECF No. 137.) However, there are no newspaper articles attached to that document and his request is therefore DENIED. He also states that he has learned that ODOT has a camera observing traffic on the Ross Island Bridge and McLoughlin Boulevard, and that reviewing the tapes from that camera would reveal the person involved in the "door in the floor" incident. (*Id.*) The court construes that portion of his Request as a motion to reopen discovery and it is DENIED. As explained in an earlier Order denying O'Callaghan's motion to reopen discovery, the discovery deadline lapsed on August 15, 2022, he has not demonstrated good cause for reopening discovery, and doing so at this late stage would be prejudicial to defendants.

Page 27  – FINDINGS AND RECOMMENDATION

**E.**    ***Motion to Declare Camp Ordinance Unconstitutional***

On October 16, 2023, O'Callaghan moved to declare the camping ordinance, as amended by House Bill 3115, unconstitutional, attaching portions of Portland City Ordinances 3.18.020 and 14A.50.020. (Pl.'s Mot. at 2-9, ECF No. 138.) In that motion, he repeats many of his allegations about his long litigation history with the City, and he contends that the City stole two of his tents on July 13-14, 2023, when he was protesting in front of City Hall. (*Id*. at 4.) Plaintiff's motion is DENIED. The amended Portland City Ordinances referenced in his motion became effective July 7, 2023, long after his complaint was filed, and he has not obtained the court's permission to include challenges to the amended ordinances in this lawsuit. *See* www.portland.gov/code/14/a50 (last visited February 27, 2024).

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

Page 28  – FINDINGS AND RECOMMENDATION

**CONCLUSION**

For the above reasons, defendant Rapid Response's Motion for Summary Judgment (ECF No. 59) should be GRANTED; defendant the City of Portland's Motion for Summary Judgment (ECF No. 63) should be GRANTED; and plaintiff's Cross Motion for Summary Judgment (ECF No. 75), Motion for Injunctive Relief (ECF No. 115), Request to Reopen Discovery (ECF No. 137), and Motion to Declare the Camping Ordinance Unconstitutional (ECF No. 138) should be DENIED. Any other pending motions should be DENIED as MOOT.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to District Judge Michael H. Simon. Objections, if any, are due within 14 days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within 14 days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED: September 26, 2024.

_____
JEFF ARMISTEAD
United States Magistrate Judge